State of New York, Court of Claims, July, 1918.    [Vol. 104.

FRED J. NOAKES, and MAUD NOAKES, His Wife, Claimants, *v.* STATE OF NEW YORK.    Claim No. 14393.

(State of New York, Court of Claims, July, 1918.)

Damages — measure of — diversion of all waters of a stream for barge canal construction — water and watercourses — when claim not barred by lapse of time.

Claimants, the owners of a dairy farm, entered into possession of a neighboring pasture lot under a contract of purchase and thereafter conducted both parcels in conjunction as a dairy farm. A small natural stream which afforded water for the use of the farm and the cattle thereon had always flowed from a point southerly of both tracts, in a northerly direction, through the pasture lot, over the premises of other owners and across the original dairy farm. Several years before the contract to purchase the pasture lot the state duly appropriated certain lands intersecting said stream from the then owner of the pasture lot and, excavating through the appropriated premises, dredged a channel for the barge canal thereby cutting off and diverting all the waters of said stream which rose or flowed from the territory southerly of the barge canal channel. This diversion has continued to the present time. That part of the water of the stream which rises or flows across claimants' premises from the territory northerly of the barge canal has been unaffected by the state but its acts and the resultant diversion have diminished the quantity of water flowing in the stream over claimants' premises during periods of the year other than those of drought. Notice of intention to file a claim for damages therefor was filed May 9, 1916, and the claim itself, though reciting that it was filed pursuant to chapter 640 of the Laws of 1915, was in fact filed a short time after chapter 420 of the Laws of 1916 became effective. *Held,* that the damage for which recovery is sought was not caused by the appropriation or use of any lands in which claimants had an interest at the time, but that such damage was the result of use by the state of its own property and of a use confined to its own property.

That irrespective of the statutes of 1915 and 1916 the claim was not barred entirely by lapse of time, the diversion being

continuous, and a recovery may be had for the damages which accrued during the period of six months prior to the filing of the notice of intention, during which time claimants have been the equitable owners and entitled to sole possession under the contract of purchase.

The fact that claimants have mistakenly sought to recover for alleged permanent diminution in the value of the premises does not affect the nature of the claim as the court will apply the proper measure of damages to the facts alleged and proved.

CLAIM for damages for cutting off and diverting all the waters of a stream which arose or flowed from the territory southerly of the barge canal channel, in the town of Verona, Oneida county.

Ward J. Cagwin, for claimants.

John H. Clogston, deputy attorney-general, for state of New York.

CUNNINGHAM, J.   In the year 1904, the claimants became the owners of a thirty-two-acre tract of land in the town of Verona, Oneida county, in this state, known in this case as the " old homestead " lot.   On or about August 7, 1912, they entered into a land contract with the fee owner of a neighboring parcel of thirty-nine acres, known as the pasture lot, for the purchase of the latter, and they then entered into possession under said contract, which has been in force at all times thereafter.   From 1904 to August 7, 1912, they had conducted the first parcel as a dairy farm, and from the latter date to the present have conducted both tracts in conjunction as such.   A small natural stream of water had always flowed from a point southerly of said tracts, in a northerly direction, through the said pasture lot, over the premises of other owners and thence across the old homestead lot.

It afforded water for the use of the farm and the cattle maintained on it, and was of some value for that purpose.

In 1910, the state duly appropriated certain lands intersecting said stream from the then owner of the pasture lot, and in that year excavated through the appropriated premises and dredged a channel for the barge canal, thereby cutting off and diverting all the waters of the stream which arose or flowed from the territory southerly of the barge canal channel. This diversion has continued to the present. Part of the water of the stream arises or flows across the claimant's premises from the territory northerly of the barge canal. This part of the water has been unaffected by the state. The state's acts and the resulting diversion have diminished the quantity of water flowing in the stream over the claimant's premises during periods of the year other than those of drought. In such periods, the acts of the state have not affected the flow of water in the stream, but at times of more plentiful supply of water the state's conduct has diminished the quantity then flowing.

The notice of intention was filed on the 9th day of May, 1916, and the claim itself was filed on May 13, 1916. The claim recites that it is filed pursuant to chapter 640 of the Laws of 1915, a so-called " enabling act," extending the time to file claims, etc., in certain cases. It was filed a short time after chapter 420 of the Laws of 1916 became effective.

This claim does not come within the purview of the statute either before or after amendment. The claim will be considered as filed under the statute after amendment. The act relates to claims for " compensation or damages for or on account of the appropriation by the state of any lands, structures, waters, franchises and rights, easements or other property." It

is clear to us that the lands, structures, waters, franchises and rights, easements or other property mentioned, refers to lands, etc., *of the claimant.* It was not the intention of the legislature to extend the privileges of the statute to all claims for damages, nor to claims for damages on account of the appropriation or use of property, *not* of the claimant, but which might, nevertheless, have damaged *premises of the claimant.* Nor was it intended to include claims for damages with which the appropriation or use of lands, etc., by the state is merely incidental, or remotely concerned or connected. To come within the remedial provisions of this statute, the damage to the claimant must be the proximate, physical and direct result of the appropriation or use by the state of land, etc., of the claimant. If he had no interest at the time in the land, etc., so appropriated, or so actually used by the state, this statute does not apply to his claim. This damage was not caused by the appropriation or use of any lands in which the claimants had an interest at the time. The excavation and dredging of the channel of the canal was effected by the state on its own premises — land which it had appropriated previous to any construction work whatever. The state did not appropriate or use any property *of the claimants,* nor were the claimants damaged on account of such appropriation or use. They were damaged as the result of use by the state of its own property, and of a use confined to its own property. It is clear to us that the legislature did not intend to abolish the safeguards provided by section 264 of the Code of Civil Procedure, as to claims arising from the use by the state of its own premises, which use may have damaged the claimants, or their property. To accomplish such a result would require a more clear and certain expression of intention by the legislature, in

its enactment of a change so important and inclusive in character.

Irrespective of these statutes, this claim is not barred entirely by lapse of time  The diversion was continuous, and so was the damage resultant from it, and recovery may be had for the damages which accrued during the period of six months prior to the filing of the notice of intention. *Collins* v. *State,* 103 Misc. Rep. 217, and cases cited.

No permanent damage to the premises has been established.  There has been a continuous lessened utility of the premises affected, for which the state is liable so long as it continues and perseveres in the diversion. *Collins* v. *State, supra,* and cases cited.

It is no answer to the claim for damage in the use of the pasture lot, that the state has compensated the prior owner of the entire pasture lot for that part thereof actually appropriated, and through which the canal is constructed.  The appropriation made the state the owner of the part appropriated.  The remainder of the premises was not affected by the mere appropriation, but by the construction work and diversion which followed, and the omission to permit the continuation of the flow of the stream, by a culvert or other means.  It does not appear that the prior owner was ever compensated in any way for the interruption of the flow of the stream, or in any other manner, except for the appropriation of the land through which the canal passes.  Nor is it material that the construction which diverted the water was effected before the claimants obtained their contract to purchase the pasture lot.  The diversion for which we will permit recovery is for the six months prior to the filing of the notice of intention, during which time the claimants have been the equitable owners and entitled to sole possession under the contract.  The diver-

sion is an injury to their right of possession of the uninterrupted flow of the natural stream, during that period.

The fact that the claimants have mistaken their measure of damage and sought recovery for alleged permanent diminution in the value of the premises does not affect the nature of the claim. The court will apply the proper measure of damages to the facts alleged and proved. The evidence is not very satisfactory in this respect, but there is sufficient before the court, as to pumping costs and other facts, to enable us to reach a conclusion as to the damage suffered during the six months' period involved. That damage amounted to twenty dollars, for which an award will be made.

All the motions made by the state at the close of the claimant's case, and at the close of the testimony, are denied, with an exception to the state.

ACKERSON, P. J., concurs.

Ordered accordingly.