MICHAEL H. RIPTON, Claimant, v. STATE OF NEW YORK.

Claim No. 15370.

(Court of Claims, August, 1921.)

*Court of Claims — damage caused by alleged leakage from Erie canal — claim dismissed for failure of proof — fixing proportion of damage due to natural causes and to negligence.*

CLAIM for damages caused by leakage from Erie canal.

Lynn Brothers (William Lynn, of counsel), for claimant.

Edward M. Brown, deputy attorney-general, for state of New York.

CUNNINGHAM, J. On April 7, 1915, the claimant entered into a contract with the city of Rochester for the construction of a sewer tunnel under the surface of Main street, extending from the intersection of Caledonia avenue on the west to the intersection of Front street on the east. The work was done in the years 1915 and 1916. In its performance, the claimant drilled six vertical shafts and then excavated the tunnel between them. Shaft No. 1 was about 148 feet northerly from the Erie canal; shaft No. 2 was about 387 feet northerly from the Erie canal; shaft No. 3 was about 425 feet northerly from the Erie canal; and shafts 4, 5, and 6, were at greater distances from the canal. The bottom of the shafts and tunnel was about 40 feet lower than the surface of Main street and about 50 feet lower than the elevation of the surface of the Erie canal when normally full. The tunnel was from 15 to 20 feet lower in elevation than the bed of the Genesee river which is in the same

vicinity. The surface of Main street, it will be noted, is 10 feet lower than the water surface of the Erie canal when full. The land slopes naturally from south to north and the Erie canal in this vicinity runs through a ditch excavated below the natural surface of the land, the water surface of the canal, when full, being lower than the land on either side of its banks.

In excavating shafts Nos. 1, 2 and 3, the claimant encountered rock between six and twelve feet below the surface of the street, and in drilling them to the required depth and completing the tunnel through the rock, water seeped and percolated into the work to such an extent, between May 15, 1915, and November 24, 1916, that it interfered with the work and delayed it very seriously, compelling the claimant to suspend operations from time to time, and to operate pumping apparatus, and to construct dams and other devices to carry off the water, and in these and other respects damaged the claimant in the sum of $13,567.98.

The claim alleges that the intrusion of the water into the work and the resulting damages were caused by leakage from the Erie canal, " by reason of the negligent construction and maintenance of the said Erie canal and the banks thereof."

It is usual to encounter some water in rock excavation, and the claimant expected it in this work, and made certain preparations to meet it. He offered no evidence other than herein recited to indicate what proportion of his damage was due to the natural seepage, and what proportion, if any, was due to leakage from the canal.

The first requisite to recovery is proof that the water leaked from the canal. Briefly, the claimant's evidence was that before the water came into the canal in May of each year but a small amount of

water appeared in the work, but thereafter the water rose very rapidly in the shafts, until the canal was filled, when it reached a standard amount which was maintained until the water was withdrawn from the canal in the fall, when it steadily decreased in the shafts and tunnel, until it practically disappeared. The greatest amount of water appeared in shaft No. 2. Two witnesses testified that in 1918 and 1919 there was an aperture in the stone wall lining the bank of the canal near the water surface and another one at the bottom of the wall. It does not appear that these holes extended beyond the wall itself, and there was no evidence of any visible leakage through the wall. The latter was a " dry " retaining wall, not intended to be water-tight, but merely to support the earth behind it. There was also evidence to the effect that during the navigation season, in these years, and previously, water leaked into the cellar of Fay's Theatre building on Main street, through its foundation wall, which is about six feet from the edge of the canal. It appeared also, that in making the shafts, the claimant encountered a stratum of clay in the rock, the effect of which was to retain water which seeped down from the upper soil, and in thus penetrating the clay, water appeared in the excavations. There was evidence, too, that on the opposite side of the canal is a sulphur spring and that sulphur water was found trickling down the wall of the excavation.

The claimant has failed to establish that the water which troubled him emanated from the canal. Evidence merely that " when water is out of the canal, everything dry; when water is in the canal, everything wet," does not establish that the water came from the canal. It is merely assuming it.

This court has many times so held. *Perkins* v. *State of New York,* 13 Court of Claims, 98; *Pronath* v. *State of New York,* 10 State Dept. Rep. 58; *Winn* v. *State of*

*New York,* Id. 44. It is obvious that the other evidence falls short of proving the source of the water. No leaks through the canal banks to this work were established. Apertures in the dry retaining wall do not indicate any leak through the earth bank behind it, particularly when it is remembered that the canal here is a ditch, and that the banks are not artificial or built-up embankments, and are almost a century old. The presence of water in the Fay Theatre building cellar, six feet from the water of the canal, with no natural earth bank intervening between them, is of no force to establish that the water in the shafts 387 feet or 425 feet distant from the canal, came from that source. The proximity of the Genesee river, the penetration of the water retaining clay stratum, the slope of land and rock, and the presence of the sulphur water are factors not to be ignored.

But granted that the water came from the canal, the claimant has failed to establish that the leakage was the result of any negligence on the part of the state. It may be, perhaps, that the state is liable for *direct injury,* as distinguished from incidental or indirect injury, due to leakage from its canals, in the absence of negligence. We are not required to pass upon that proposition. This claim is predicated on the *negligence* of the state, and proof of negligence is a prerequisite to recovery. This court said, in *Williams* v. *State of New York,* 106 Misc. Rep. 19, 24: "In brief, she cannot recover for trespass because she did not allege it; she cannot recover for negligence because she has failed to establish it. *Konner* v. *State of New York, supra.*"

The claimant's witnesses agreed that the section of canal involved was in accord with good engineering practice, both as to type and construction. The banks and wall were usual and proper. Mr. Gray testified that a rubble wall, which this was, backed with earth is as impervious as concrete. It does not

appear that the wall or the banks were out of reasonable repair. There is no proof that the two apertures in the wall existed in 1915 or 1916, but in any event, they do not indicate a negligent condition, for it does not appear that they extended into or through the bank or caused any leakage whatever. In short there is no evidence indicating any reasonable act or thing which the state did, which due care forbade, or omitted to do, which due care required.

For the foregoing reasons there can be no recovery. In addition, granted for the argument, that some of the water came into the shafts as a result of the state's negligence, yet it is clear that some of it was due to natural causes, and it would seem that the claimant is in the difficulty which this court has discussed several times. Briefly, there is absolutely no evidence from which the court can infer what proportion of the claimant's injury, if any, was due to natural causes, and what part of it, if any, was due to the state's negligence. It is true, that in such cases we have wide latitude in fixing the proportion of damage for which the state is responsible, but here it would seem that there is a total absence of evidence upon which the court could base a conclusion. This is fatal to recovery. *Harter* v. *State of New York,* 106 Misc. Rep. 9; *Cooper* v. *State of New York,* 103 id. 209; *Bauer* v. *State of New York,* 106 id. 1; *Ostrander* v. *State of New York,* 192 N. Y. 415. The claim is dismissed.

ACKERSON, P. J., concurs.

Claim dismissed.